UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER DUGAS, TIMOTHY JOHNSON, SHARONNA TEZENO and NICHOLE FONTENOT individually and on behalf of all others similarly situated, | CIVIL ACTION NO. <br><br> CLASS ACTION COMPLAINT |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| CITY OF VILLE PLATTE, VILLE PLATTE POLICE DEPARTMENT, EVANGELINE PARISH and EVANGELINE PARISH SHERIFF'S OFFICE, | |
| Defendants. | |

Plaintiffs, Christopher Dugas, Timothy Johnson, Sharonna Tezeno and Nichole Fontenot (collectively, "Plaintiffs"), by and through their attorneys, Hach Rose Schirripa & Cheverie LLP, the Law Office of Conrad Benedetto, and Cornish Law, LLC, bring this action for damages and other legal and equitable relief from the City of Ville Platte, Louisiana, Evangeline Parish, Louisiana, the Ville Platte Police Department, the Evangeline Parish Sheriff's Office (collectively, "Defendants"), and DOES 1 through 100, and allege as follows:

## INTRODUCTION

1.      Defendants Evangeline Parish and City of Ville Platte are municipalities within the State of Louisiana, and maintain police forces to maintain and enforce the law within their borders.

2.     On December 19, 2016, the United States Department of Justice, Civil Rights Division ("DOJ") released the results of its investigation of the Ville Platte Police Department ("VPPD") and the Evangeline Parish Sheriff's Office ("EPSO").

3.     Following its thorough investigation, the DOJ concluded that there was reasonable cause to believe that both EPSO and VPPD engaged in a pattern or practice of unconstitutional conduct over the course of more than two decades.

4.     Specifically, the DOJ found that both VPPD and EPSO regularly arrested and held people in jail – without first obtaining a warrant, and without probable cause – in violation of the Fourth Amendment to the United States Constitution.  VPPD and EPSO both referred to these unconstitutional arrests as "investigative holds."

5.     Individuals detained under investigative holds are commonly detained for 72 hours or more without being provided an opportunity to contest their arrest and detention.  Instead, they are held and questioned until they either provided information – which may or may not be accurate, given simply in order to end their secret and indefinite confinement – or the law enforcement agency determines that they did not have information related to a crime.

6.     This unconstitutional investigative hold practice is routine at EPSO and VPPD.  Both agencies acknowledged to the DOJ that they used the practice of investigative holds for as long as anyone at either agency can remember.

7.     For example, between 2012 and 2014, EPSO initiated over 200 arrests where the only documented reason for arrest was an investigative hold.  Over that same period, VPPD used the practice more than 700 times.  And yet, because both agencies use rudimentary arrest documentation systems, the total number of arrests for investigative hold purposes is likely underreported.

8.      In April 2015, leadership of EPSO, VPPD and City of Ville Platte openly admitted that their practice of using investigative holds is unconstitutional.

9.      Plaintiffs are citizens of Ville Platte and Evangeline Parish whose constitutional rights were violated by VPPD and/or EPSO by and through their pattern and practice of unconstitutional arrests.

10.     Accordingly, pursuant to 42 U.S.C. § 1983, Louisiana state law, La. Rev. Stat. Ann. § 15:257, and the Louisiana Code of Criminal Procedure, La. Code Crim. Proc. Ann. art. 230.2, Plaintiffs allege that they are entitled to recover (i) damages for any economic losses incurred as a result of the violation of their Fourth Amendment rights and rights provided by state law; (ii) additional compensatory damages for any non-economic losses resulting from said violations; (iii) punitive damages owing to the willful and intentional nature of said violations; and (iv) costs and attorney fees, and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

11.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343, and Article III of the United States Constitution, as Plaintiffs seek redress of deprivations to their civil rights secured by the United States Constitution.

12.     Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction of the claims based on Louisiana law, as they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Plaintiffs' claims arise out of acts of the Evangeline Parish Sheriff's Office and Ville Platte Police Department in Evangeline Parish, State of Louisiana.  Accordingly, venue is proper within the Western District of Louisiana.

## PARTIES

14.     Plaintiff Christopher Dugas ("Dugas") is currently a resident of Lafayette, LA which is located within the limits of Evangeline Parish.  In or around 2013, Plaintiff Dugas was taken to the VPPD jail from his house by a VPPD officer.  Plaintiff Dugas was accused of taking a picture of a minor with his cell phone.  Upon being approached by the VPPD officer, Plaintiff Dugas provided the officer with his cellular device for inspection.  No such picture of a minor was found on the device.  Plaintiff Dugas was in the VPPD jail for four or five months.  During that time, Plaintiff Dugas was read the charges against him.  Plaintiff Dugas was moved to the Evangeline Parish jail in or around September 2013.  EPSO officers placed him in a room of family members of the minor he was accused of taking the photograph of.  The individuals in the room physically beat and abused him in the EPSO jail.  EPSO officers eventually removed him from that room and moved him to another jail in Pine Prairie.  Plaintiff Dugas was in the Pine Prairie for approximately two more months.  When Plaintiff Dugas was ultimately brought before the judge six months after being brought into the VPPD jail, he was offered a plea bargain for time served and a "pass without dismiss."

15.     Plaintiff Timothy Johnson ("Johnson") is currently a resident of Mamou, LA which is located within the limits of Evangeline Parish.  In or around 2013, Plaintiff Johnson's roommate at the time reported to Chief Lartigue of the VPPD that his television was stolen.  Plaintiff Johnson's roommate informed the police that Plaintiff Johnson was sleeping at the time of the

incident.  Despite this information, VPPD arrested Plaintiff Johnson and held him for 11 days at the VPPD jail without being charged.  Plaintiff Johnson was also arrested a second time by VPPD, unrelated to the stolen television, and held for three days without being charged.

16.     Plaintiff Sharonna Tezeno ("Tezeno") is currently a resident of Mamou, LA, which is located within the limits of  Evangeline Parish/.  In or around 2013, Plaintiff Tezeno was witness to a home invasion in the course of which firearm was discharged by a male companion of Plaintiff Tezeno.  Plaintiff Tezeno was pregnant at the time of the incident.  When the Ville Platte were called to the scene of the incident, Plaintiff Tezeno was taken into the jail and interrogated by one Detective Nathaniel of the Ville Platte Police Department and one Ms. Neecy for over an hour. Plaintiff Tezeno's possessions, including a cellular phone and money, were taken from her and she was detained, uncharged, and forced to remain in a jail cell for over 48 hours after the interrogation. Plaintiff Tezeno was ultimately let go but was not given back her possessions.  Plaintiff Tezeno was never charged with anything and never appeared in Court for any violations arising out of this incident.

17.     Plaintiff Nichole Fontenot ("Fontenot") is currently a resident of  Ville Platte, which is located within the limits of Evangeline Parish.  In or around March 2016, EPSO officers came to Plaintiff Fontenot's house to arrest a male companion for an outstanding bench warrant. EPSO arrested the male companion, a Mr. Gautrux, at that time.  EPSO then returned to Plaintiff Fontenot's home and arrested her.  Seventy days after being arrested and not charged, Plaintiff Fontenot was brought before a judge and released from custody.

18.     Defendant Evangeline Parish is a public entity organized and existing under the laws of the State of Louisiana.  Defendant Evangeline Parish Sheriff's Office is a public entity within the meaning of Louisiana law, and is a Parish agency.  Evangeline Parish is approximately

80 miles west of Baton Rouge, Louisiana. Covering 662 square miles, the Parish has a population of 33,578 residents, of whom 29 percent are African American.  Defendant Evangeline Parish Sheriff's Office ("EPSO") is located in Evangeline Parish. The EPSO is responsible for patrolling all of Evangeline Parish, assisting with criminal investigations in towns within the Parish, and operating the Evangeline Parish Jail.  EPSO has roughly 65 full-time and 45 part-time employees, including a chief of patrol, 14 patrol deputies, four detectives, and corrections officers and a warden at the Parish Jail.  According to the DOJ, EPSO was systematically engaged in the practices set forth herein in violation of the Plaintiffs' Fourth Amendment Rights throughout the Relevant Period.

19.     Defendant City of Ville Platte ("Ville Platte") is a public entity organized and existing under the laws of the State of Louisiana.  Defendant Ville Platte Police Department is a public entity within the meaning of Louisiana law, and is a City agency.

20.     Defendant Ville Platte Police Department ("VPPD"), is located in Ville Platte, Louisiana.  Ville Platte is the Parish seat and largest city in Evangeline Parish, and has a population of 7,303 spread across roughly four miles, of whom 64 percent are African American.  Ville Platte has its own police department and operates the City Jail located next to VPPD headquarters. VPPD and EPSO leadership reported that the two agencies work together to address criminal activity in Ville Platte.  VPPD currently employs 18 full-time sworn officers, including four detectives and 16 part-time civilian officers who work in the City Jail. Officers assigned to patrol work twelve hour shifts, with two or three officers assigned per shift.  The Mayor of Ville Platte is responsible for setting VPPD's total annual budget authorization, but the Chief of Police may allocate the money as he or she sees fit. VPPD's annual budget for 2015 was $1.9 million.

21.     Defendants are sued in their own right for a City and/or VPPD policy, practice or custom which caused Plaintiffs' injuries in violation of federal constitutional guarantees, and on Plaintiffs' state law claims based on *respondeat superior*, under Louisiana Civil Code 2320.

22.     These Defendants, Evangeline Parish, Ville Platte, EPSO and VPPD are sued herein in their own right for a Parish and/or EPSO policy, practice or custom which caused Plaintiffs' injuries in violation of federal constitutional guarantees, and on Plaintiffs' state law claims based on *respondeat superior*, under Louisiana Civil Code 2320.

23.     Defendant Sheriff Eddie Soileau ("Soileau") is the elected Sheriff of the Evangeline Parish Sheriff's Office.  He was first elected in 2007, and won re-election again in the fall of 2015. The current annual operating budget is around $2.6 million.

24.     Defendant Chief Neal Lartigue ("Lartigue") has led VPPD for the last nine years and has worked within the agency for nearly a quarter century.

25.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will give notice of this complaint, and of one or more of DOES' true names and capacities, when ascertained.  Plaintiffs are informed and believe and based thereon allege, that defendants DOES 1 through 100 are responsible in some manner for the damages and injuries hereinafter complained of.

26.     DOES 1-50 (hereinafter collectively referred to as "EPSO Supervisory defendants") were and are now responsible for all processes and practices involved in the EPSO's use of investigative holds, including the detectives who order the arrests, the patrol officers who carry out the arrests, and those responsible for any and all control over the detainees at the Evangeline Parish Jail, as well as anyone responsible for the formulation, promulgation, adoption,

application, administration and enforcement of the policies, rules, regulations and practices involved in all aspects of the investigative holds.

27.    DOES 51-100 (hereinafter collectively referred to as "VPPD Supervisory defendants") were and are now responsible for all processes and practices involved in the VPPD's use of investigative holds, including the detectives who order the arrests, the patrol officers who carry out the arrests, and those responsible for any and all control over the detainees at the Ville Platte City Jail, as well as anyone responsible for the formulation, promulgation, adoption, application, administration and enforcement of the policies, rules, regulations and practices involved in all aspects of the investigative holds.

28.    Upon information and belief, Plaintiffs further allege that, at all times relevant herein, the EPSO Supervisory defendants and the VPPD Supervisory defendants participated in, approved, and/or ratified the unconstitutional or illegal acts complained of herein.

29.    Plaintiffs are informed and believe, and thereupon allege that, at all times relevant herein, the individual defendants, and each of them, were the agents, servants and employees of their respective employers (Defendants, EPSO, and VPPD) and were acting at all times within the scope of their agency and employment, and with the knowledge and consent of their principals and employers.  At all times herein, defendants, and each of them, were acting under the color of state law.

## **STATEMENT OF THE FACTS**

30.    Defendant Evangeline Parish operates EPSO as an agency of the municipality in Evangeline Parish, Louisiana. EPSO is responsible for patrolling all of Evangeline Parish, assisting

with criminal investigations in towns within the Parish, and operating the Evangeline Parish Jail ("Parish Jail").

31.     Defendant Ville Platte operates VPPD as an agency of the municipality in Ville Platte, Louisiana.  It also operates the Ville Platte City Jail ("City Jail") next to VPPD headquarters.

32.     Defendants acknowledged to the DOJ that both EPSO and VPPD work together to address criminal activity in Ville Platte.

33.     When a detective at either EPSO or VPPD wants to question someone in connection with an ongoing criminal investigation, the detective instructs a patrol officer to find that individual in the community and bring him or her in for questioning.  So ordered, the patrol officer locates the individual and commands them to ride in a patrol vehicle to either the City or Parish jail.

34.     Upon arriving at either the City or Parish jail, pursuant to the jails' standard procedures, the individual is strip-searched by jail personnel and then placed in a holding cell until a detective is available to conduct questioning.

35.     At the City Jail, there are two holding cells, each equipped with a hard metal bench and nothing else.  Neither holding cell has a mattress, running water, shower, or toilet in the cell.

36.     Similarly, at the Parish Jail, the holding cell is equipped with only a long metal bench, and the walls are made of metal grating.  EPSO detectives and deputies colloquially refer to the process of detaining individuals for questioning in the Parish Jail holding cell as "putting them on ice."  Both EPSO and VPPD officially refer to these detentions as "investigative holds."

37.     Investigative holds initiated by VPPD often last for 72 hours – and sometimes significantly longer, with booking logs from 2012-2014 referencing several dozen investigative holds lasting for at least a full week.  During this time, detainees are forced to spend nights sleeping on either a concrete floor or metal bench.  Additionally, VPPD exerts full control over the

detainees' liberty: the detained individual is not permitted to make phone calls to inform family members or employers as to their whereabouts, and have no access to bathrooms or showers unless and until taken into the jail's general population area.

38.     EPSO conducts similar investigative holds, which often last for three full days and sometimes longer.  During the hold, detainees are forced to sleep on the Parish Jail's concrete floor.  As with VPPD, EPSO also controls the detainee's liberty: EPSO also does not permit detainees on investigative hold to make phone calls, and in fact, EPSO detectives have threatened Parish Jail officers with retaliation if the officers allowed the detainees to make phone calls.

39.     Detectives of both EPSO and VPPD have acknowledged to the DOJ that they use investigative holds specifically where they *lack probable cause or sufficient evidence for an arrest*, instead using them when they have a "hunch" or a "feeling" that the individual detained may be connected to criminal activity.

40.     Officers at both EPSO and VPPD admitted to the DOJ that they use the time that a person is on investigative hold to develop their case, either by gathering evidence or by convincing the detainee to confess.  However, both agencies confirmed that they used holds to detain individuals *whom they did not suspect of any involvement in criminal activity*, but who instead were related to suspects, witnessed crimes, or otherwise might have knowledge of criminal activity.  Because officers of EPSO and VPPD are willing to arrest and detain individuals who are merely possible witnesses in criminal investigations, *literally anyone in Evangeline Parish or Ville Platte could be arrested and placed on investigative hold at any time*.

41.     For example, a woman and her family were detained in 2014 after a grocery shopping trip in which they might have witnessed an armed robbery and shooting.  The woman informed VPPD officers that she did not witness the crime, and therefore had no information

relating to it.  She was nevertheless commanded to come to the police station to answer questions, along with her boyfriend and a juvenile who was staying at their house at the time, and was taken into custody at the City Jail.  Officers strip-searched the woman, who was menstruating at the time, and forced her to remove her tampon.  They then placed her in custody overnight – first in a holding cell, and then in the Jail's general population – without access to sanitary products.  Roughly nine hours later, the woman was interrogated by VPPD detectives and the district attorney.  VPPD officers also held the woman's boyfriend overnight in a holding cell, and held the juvenile for at least seven hours in a separate holding cell before releasing him to a family member.  None of these individuals were suspected of having any connection to the robbery or shooting, and yet all were detained for significant periods of time before being shown a line up or asked questions about what they witnessed.  When the woman called VPPD the day after being released to complain about her treatment, the VPPD Chief responded that ***the detention was pursuant to department policy***.

42.     EPSO and VPPD have used these unconstitutional investigative holds as standard practice for more than two decades.

43.     Defendants intentionally placed Plaintiffs on investigative holds.

44.     During the course of Plaintiffs' detentions on investigative holds, Defendants did not provide Plaintiffs any opportunities to challenge their continued detention, or even to notify anyone of the fact of their detention.

45.     In no case involving an investigative hold was there prior judicial approval given for the use of the investigative hold practice, thereby removing any justification for said holds under any conception of material witness detentions.  The holds are made ***without a warrant, without any showing that the testimony is essential and that obtaining it via subpoena is***

*impracticable, and without any attempt to obtain prior judicial approval, or even subsequent judicial review*.

46.     Defendants have a policy, practice or custom of violating the civil rights of detainees on investigative holds.

47.     In April 2015, defendants EPSO, VPPD and Ville Platte openly admitted that their practice of using investigative holds is unconstitutional.

48.     Because of Defendants' unlawful actions, Plaintiffs have suffered loss of liberty, loss of enjoyment of life, humiliation, mental suffering, emotional distress, stress, and other non-economic losses in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS

49.     This action is brought and may properly be maintained as a class action pursuant to Rule 23(a) as well as Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure. This action is brought pursuant to Rule 23(b)(2) for injunctive or declaratory relief and Rule 23(b)(3) for money damages.

50.     Plaintiffs bring this action on behalf of themselves, and on behalf of a class of all other persons similarly situated, who were forced to undergo unlawful investigative holds propagated, maintained, and under the control of Defendants, EPSO Supervisory defendants, and VPPD Supervisory defendants during the period January 1, 1997 through the cessation of the Defendants' pattern and practice of unlawful investigative holds (the "Class Period").

51.     On information and belief, and based on the DOJ's December 19, 2016 released results of its investigation of VPPD and EPSO, Plaintiffs allege the investigative holds to which they and class members were subjected were done pursuant to Defendants' policy and practice to

arrest and detain citizens of Evangeline Parish and Ville Platte without regard to: (i) Probable cause; (ii) Presence or existence of a warrant for arrest; (iii) Duration of detention; (iv) Conditions of detention; or (v) Civil rights of detainees held on investigative holds.

52.     On information and belief, and based on the DOJ's December 19, 2016 released results of its investigation of VPPD and EPSO, Plaintiffs allege that Defendants, EPSO Supervisory defendants, and VPPD Supervisory defendants have a policy of maintaining these investigative holds in direct violation of detainees' Fourth Amendment and state law rights, as described above.

## RULE 23 PREREQUISITES

### *Numerosity*

53.     In accordance with Fed. R. Civ. P. 23(a), the members of the class are so numerous that joinder of all members is impracticable.  Plaintiffs do not know the exact number of class members.  Plaintiffs are informed and believe and thereon allege that there are more than 50 prisoners over the course of the last year who were subjected to investigative holds as a result of defendants' policy and practice of indiscriminately violating individual detainees' rights under the United States Constitution and Louisiana state law.

54.     The DOJ investigation has revealed that between January 2012 and December 2014, EPSO listed "investigative hold" as the sole basis for over 200 arrests. During the same time period, VPPD arrested individuals on investigative holds more than 700 times.

### *Common Issues of Fact or Law*

55.     In accordance with Fed. R. Civ. P. 23(a), there are questions of fact common to the class.  Plaintiffs are informed and believe and thereon allege that the common questions of fact

include, but are not limited to the following: (1) Whether defendants routinely subject the citizens of Evangeline Parish and Ville Platte to arrest and detention without warrant or probable cause; (2) Whether the manner and condition of individuals' detentions on investigative hold are equivalent or else so similar as to be functionally equivalent; and (3) Whether the duration of detainees' incarceration on investigative holds similarly violate the detainees' constitutional and state rights.

56.     In accordance with Fed. R. Civ. P. 23(a), there are questions of law common to the class.  Plaintiffs are informed and believe and thereon allege that the common questions of law include but are not limited to the following: (1) Whether defendants may indiscriminately arrest and detain individuals without there being any warrant or probable cause, based on specific or articulable facts, for their arrest; (2) Whether defendants' use of investigative holds violates detainees' Fourth Amendment rights, in violation of 42 U.S.C. § 1983; (3) Whether defendants' use of investigative holds violates La. Rev. Stat. Ann. § 15:257; (4) Whether defendants' use of investigative holds violates La. Code Crim. Proc. Ann. art. 230.2; (5) Whether the conduct described above constitutes a policy or custom of the defendants; (6) Whether any individual defendant is entitled to qualified immunity on the federal claims, or state law immunity on the state law claims, for the practices complained of herein; and (7) Whether determination of damages suffered by a statistically representative sample of the class provides the basis for determination of all class members' damages except those who opt out.

*Typicality*

57.     In accordance with Fed. R. Civ. P. 23(a), the claims of the representative Plaintiffs are typical of the class.

Plaintiffs have the same interests and have suffered the same type of damages as the class members.  Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members.  Each class member suffered actual damages as a result of being subjected to an investigative hold.  The actual damages suffered by Plaintiffs are similar in type and amount to the actual damages suffered by each class member.

58.     In accordance with Fed. R. Civ. P. Rule 23(a), the representative Plaintiffs will fairly and adequately protect the interests of the class.  The interests of the representative Plaintiffs are consistent with and not antagonistic to the interests of the class.

59.     Upon information and belief, Defendants' continue to utilize and conduct investigative holds, a policy and practice that indiscriminately violate individual detainees' rights under the United States Constitution and Louisiana state law, on grounds that apply generally to the Class so that final injunctive relief is appropriate with respect to the Class as a whole.

*Maintenance and Superiority*

60.     In accordance with Fed. R. Civ. P. 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

61.     In accordance with Fed. R. Civ. P. 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

62.     In accordance with Fed. R. Civ. P. 23(b)(2), Plaintiffs are informed and believe and thereon allege that the defendants have acted on grounds generally applicable to the class.

63.     In accordance with Fed. R. Civ. P. 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties.  Plaintiffs are informed and believe and thereon allege that the interest of class members in individually controlling the prosecution of a separate action is low, in that most class members would be unable to individually prosecute any action at all.  Plaintiffs are informed and believe and thereon allege that the amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them.  Plaintiffs are informed and believe and thereon allege that it is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, *i.e.*, Evangeline Parish, and it will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple courts.

64.     Plaintiffs do not know the identities of the class members.  Plaintiffs are informed and believe and thereon allege that the identities of the class members are ascertainable from EPSO and VPPD records.  Plaintiffs are informed and believe and thereon allege that these records reflect the identities, including addresses and telephone numbers, of the persons who have been held in custody on investigative holds by EPSO and/or VPPD; when detainees were arrested, taken into custody, and why and when they were eventually released.

65.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  The class action is superior to any other available means to resolve the issues raised on behalf of the class.  The class action will be manageable because several different records systems exist from which to ascertain the members of the class.  Liability can be determined on a class-wide basis.  Damages can be determined on a

class-wide basis using a damages matrix set by a jury, or by trying the damages of a statistically valid sample of the class to a jury and extrapolating those damages to the class as a whole.

66.     In accordance with Fed. R. Civ. P. Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Plaintiffs are informed and believe that EPSO and VPPD records contain last known addresses for class members.  Plaintiffs contemplate that the notice inform class members of the following:

      A.     The pendency of the class action, and the issues common to the class;

      B.     The nature of the action;

      C.     Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

      D.     Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named Plaintiffs and their counsel; and

      **E.**     Their right, if they do not 'opt out,' to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues, adverse to the class.

**TIMELINESS OF PLAINTIFFS AND OTHER CLASS MEMBERS' CLAIMS**

67.     The applicable statutes of limitations for Plaintiffs and other class members' claims for relief asserted in this Complaint were tolled by Defendants' affirmative acts of concealment, as described below.

68.     At all relevant times herein, Plaintiffs and other class members were told by the police officers not to discuss what happened to them under the threat of legal reprisals, including

the threat of serving jail time.  Therefore, as Plaintiffs and other class members understood their situation at the time they were not allowed to discuss what happened to them with anyone and as a result took no action until this suit was filed.

69.     Upon information and belief, members of the putative Class were questioned by the Federal Bureau of Investigation and representatives of the DOJ who told them not to discuss the government investigation until after the DOJ completed its report and findings.  The putative Class members lacked sophistication and education, and were under the impression and of the understanding that they were ordered by people cloaked with the authority of the law (i.e., the FBI and DOJ) not to discuss the events which happened to them until after the release of the DOJ report.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Fourth Amendment – 42 U.S.C. § 1983

70.     Plaintiffs hereby re-allege and incorporate by reference all allegations in all preceding paragraphs.

71.     Without any basis in state law, Defendants willfully and intentionally detained Plaintiffs in violation of their Fourth Amendment rights against unlawful search and seizure without probable cause.

72.     As a direct result of Defendants' actions, Plaintiffs were unlawfully deprived of their liberty.

73.     A municipal government may be held liable under 42 U.S.C. § 1983 where a plaintiff demonstrates that a deprivation of a federal right occurred as a result of a policy of the local government's legislative body, or the actions of local officials where those acts may fairly be said to be those of the municipality.

74.     Investigative holds have been municipal policies for both Evangeline Parish and Ville Platte for over two decades, as they have been used with willful disregard for the Fourth Amendment rights of Defendants' citizens for that entire duration, and the investigative holds are directly causally linked to the deprivation of those rights.

75.     Given the two-decade-plus duration of EPSO and VPPD's practice of using illegal investigative holds, the Defendants' policy and actions of their local officials, as well as the clear municipal policies these investigative holds represent, make Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
**La. Rev. Stat. Ann. § 15:257**

76.     Plaintiffs hereby re-allege and incorporate by reference all allegations in all preceding paragraphs.

77.     Defendants arrested and imprisoned Plaintiffs in the hope of eliciting information relating to criminal activity.

78.     Defendants did not have, nor seek to have, a judge issue warrants for Plaintiffs' arrests.

79.     Defendants also did not attempt to subpoena Plaintiffs, nor entertain the possibility of doing so.

80.     Accordingly, Defendants violated Plaintiffs' rights under Louisiana law, La. Rev. Stat. Ann. § 15:257.

## THIRD CAUSE OF ACTION
## La. Code Crim. Proc. Ann. art. 230.2

81.     Plaintiffs hereby re-allege and incorporate by reference all allegations in all preceding paragraphs.

82.     Defendants arrested and imprisoned Plaintiffs without warrants or probable cause.

83.     Defendants maintained Plaintiffs' detention for longer than 48 hours without any determination being made as to whether there was probable cause for their arrests and incarcerations.

84.     Following the expiration of 48 hours' detention, Plaintiffs were not released on their own recognizance.

85.     Accordingly, Defendants violated Plaintiffs' rights under Louisiana law, La. Code Crim. Proc. Ann. art. 230.2(A), (B)(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the class members they represent, demand judgment against defendants as follows:

86.     Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as Class representatives and Plaintiff's counsel as counsel for the Class;

87.     An order enjoining Defendants further use of investigative holds, a policy and practice, which that indiscriminately violate individual detainees' rights under the United States Constitution and Louisiana state law;

88.     Awarding compensatory and punitive damages in favor of Plaintiff and the other Class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be determined at trial, including pre- and post-judgment interest thereon;

89.     Awarding Plaintiff and the other Class members their reasonable costs and expenses incurred in this action, including counsel fees and costs, and expert fees and costs, including specifically all costs and attorney fees pursuant to 42 U.S.C. § 1988; and

90.     Such other and further relief as this Court deems just and proper.


DATED this 28 day of February, 2017          Respectfully submitted,

                                        By:  _____
                                             Trachelle L. Cornish, Esq.
                                             CORNISH LAW, LLC
                                             201 St. Charles Avenue, Suite 2500
                                             New Orleans, LA 70170
                                             Tel.: (504) 638-9050

                                             HACH ROSE SCHIRRIPA & CHEVERIE LLP

                                             Frank R. Schirripa, Esq.
                                             Daniel B. Rehns, Esq.
                                             185 Madison Avenue, 14th Floor
                                             New York, New York 10016
                                             Tel: (212) 213-8311

                                             LAW OFFICE OF CONRAD J. BENEDETTO
                                             Conrad J. Benedetto, Esq.
                                             Kimmo H. Abbasi, Esq.
                                             1615 S. Broad Street
                                             Philadelphia, Pa. 19148
                                             Tel.: (215) 389-1900


                                             *Counsel for Plaintiffs and Putative Class*