UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICHOLE FONTENOT, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>CITY OF VILLE PLATTE, POLICE CHIEF NEAL LARTIGUE, EVANGELINE PARISH SHERIFF'S OFFICE, and SHERIFF EDDIE SOILEAU,<br><br>                      Defendants. | **CIVIL ACTION NO.**<br>**6:17-CV-00337-DEW-PJH**<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nichole Fontenot ("Plaintiff"), by and through her attorneys, Hach Rose Schirripa & Cheverie LLP, the Law Office of Conrad Benedetto, and Cornish Law, LLC, brings this action for damages and other legal and equitable relief from the City of Ville Platte, Louisiana ("Ville Platte"), Police Chief Neal Lartigue ("Lartigue") of the Ville Platte Police Department ("VPPD"), the Evangeline Parish Sheriff's Office ("EPSO"), Sheriff Eddie Soileau of the EPSO ("Soileau") and DOES 1 through 100,[1] and allege as follows:[2]

## INTRODUCTION

1.      Evangeline Parish and the City of Ville Platte are municipalities within the State of Louisiana, and maintain police forces to maintain and enforce the law within their borders.

---

[1] The collective Defendants in this action include Ville Platte, Lartigue, EPSO, Soileau, and DOES 1-100 ("Defendants").

[2] Pursuant to Judge Walter's December 19, 2017 Order, *see* Dkt. No. 93 (the "December 19, 2017 Order"), adopting Magistrate Hanna's Report and Recommendation, Plaintiffs Christopher Dugas, Timothy Johnson, and Sharonna Tezeno's claims against the City of Ville Platte and Chief Lartigue have been removed this action; however, Plaintiffs Dugas, Johnson, and Tezeno reserve their right to replead their respective claims against the City of Ville Platte and Chief Lartigue should this Court decide to toll the prescriptive period, as alleged herein.

2.      On December 19, 2016, the United States Department of Justice, Civil Rights Division ("DOJ") released the results of a non-public investigation into abuses of power and violations of civil rights committed by members of VPPD and the EPSO.  *See* the "DOJ Report," attached hereto as **EXHIBIT A**.  The DOJ Report concluded that both EPSO and VPPD engaged in a pattern or practice of unconstitutional conduct over the course of more than two decades.

3.      Specifically, the DOJ uncovered damning evidence that both VPPD and EPSO regularly arrested and held people in jail – without first obtaining a warrant and without having probable cause – in violation of their Fourth Amendment Rights.  VPPD and EPSO referred to these unconstitutional arrests as "investigative holds."

4.      Individuals detained under investigative holds were commonly detained by VPPD and/or EPSO for ***72 hours or more*** without being provided an opportunity to contest their arrest and detention.  Instead, they were held and questioned until they either provided information or the law enforcement agency determined that they did not have information related to a crime.  In fact, in many instances the two agencies would work together to exceed the time that wrongfully arrested citizens were held – shuffling them back and forth between VPPD and EPSO custody.

5.      According to the DOJ Report, the unconstitutional investigative hold practice was routine at EPSO and VPPD.  In fact, both agencies privately acknowledged to the DOJ that they used the practice of investigative holds for as long as anyone at either agency can remember. *See* Exhibit A, at 2.

6.      Notably, between 2012 and 2014, EPSO initiated over 200 arrests where the only documented reason for arrest was an investigative hold.  Over that same period, VPPD used the practice more than 700 times.  And yet, because both agencies use rudimentary arrest documentation systems, the total number of arrests for investigative hold purposes is likely

underreported – which means that in a three-year period alone, these agencies engaged in this blatantly unconstitutional practice more than 1,000 times.

7.      Plaintiff and the proposed Class Members are citizens of Ville Platte and/or Evangeline Parish whose constitutional rights were violated by VPPD and/or EPSO by and through their pattern and practice of unconstitutional arrests.

8.      Accordingly, pursuant to 42 U.S.C. § 1983, Louisiana state law, La. Rev. Stat. Ann. § 15:257, and the Louisiana Code of Criminal Procedure, La. Code Crim. Proc. Ann. art. 230.2, Plaintiff alleges that she is entitled to recover (i) damages for any economic losses incurred as a result of the violation of her Fourth Amendment rights and rights provided by state law; (ii) additional compensatory damages for any non-economic losses resulting from said violations; (iii) punitive damages owing to the willful and intentional nature of said violations; and (iv) costs and attorney fees, and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

9.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343, and Article III of the United States Constitution, as Plaintiff seeks redress of deprivations to her civil rights secured by the United States Constitution.

10.     Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction of the claims based on Louisiana law, as they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Plaintiff's claims arise out of acts of the Evangeline Parish Sheriff's Office and Ville Platte in Evangeline Parish, State of Louisiana.  Accordingly, venue is proper within the Western District of Louisiana.

## PARTIES

12.     Plaintiff Nichole Fontenot ("Fontenot") is a resident of Ville Platte, which is located within Evangeline Parish.  On or about May 19, 2016, EPSO Officers arrested Plaintiff Fontenot at her home residence.  Upon being taken into custody by EPSO, she was placed in the custody of VPPD as the "arresting agency."  *See* Plaintiff Fontenot's Jail/Booking Card, attached hereto as **EXHIBIT B**.  Between May 19 and June 7, Plaintiff was unconstitutionally detained by both VPPD and EPSO.  On June 7, 2016, twenty days after being arrested and not charged, Plaintiff Fontenot was transferred to the Caldwell Correction Center under the authority of EPSO.  Between May 19 and June 27, Plaintiff was never formally charged with a crime.  On or around June 27, 2016, Plaintiff Fontenot was finally brought before a judge and released from custody – over one month after Fontenot was first arrested.

13.     Defendant Evangeline Parish Sheriff's Office is a public entity within the meaning of Louisiana law, and is a Parish agency.  Evangeline Parish is approximately 80 miles west of Baton Rouge, Louisiana.  Covering 662 square miles, the Parish has a population of 33,578 residents, of whom 29 percent are African American.  Defendant Evangeline Parish Sheriff's Office is located in Evangeline Parish.  The EPSO is responsible for patrolling all of Evangeline Parish, assisting with criminal investigations in towns within the Parish, and operating the Evangeline Parish Jail.  EPSO has roughly 65 full-time and 45 part-time employees, including a chief of patrol, 14 patrol deputies, four detectives, and corrections officers and a warden at the Parish Jail.  According to the DOJ, EPSO was systematically engaged in the practices set forth herein in violation of the Plaintiff's Fourth Amendment Rights throughout the Relevant Period.

14.     Defendant City of Ville Platte is a public entity organized and existing under the laws of the State of Louisiana.  Ville Platte Police Department is a public entity within the meaning

of Louisiana law, and is a City agency.  VPPD is located in Ville Platte, Louisiana.  Ville Platte is the Parish seat and largest city in Evangeline Parish, and has a population of 7,303 spread across roughly four miles, of whom 64 percent are African American.  Ville Platte has its own police department and operates the City Jail located next to VPPD headquarters. VPPD and EPSO leadership reported that the two agencies work together to address criminal activity in Ville Platte. VPPD currently employs 18 full-time sworn officers, including four detectives and 16 part-time civilian officers who work in the City Jail. Officers assigned to patrol work twelve-hour shifts, with two or three officers assigned per shift.  The Mayor of Ville Platte is responsible for setting VPPD's total annual budget authorization, but the Chief of Police may allocate the money as he or she sees fit.  VPPD's annual budget for 2015 was $1.9 million.

15.    Defendants are sued in their own right and for the policies, practices or customs which caused Plaintiff's and the Class' injuries in violation of federal constitutional guarantees and Louisiana state law.

16.    Defendant Soileau is the elected Sheriff of the Evangeline Parish Sheriff's Office. He was first elected in 2007, and won re-election in the fall of 2015.  The current annual operating budget for EPSO is around $2.6 million.

17.    Defendant Lartigue has led VPPD for the last nine years and has worked within the agency for nearly a quarter century.

18.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will give notice of this complaint, and of one or more of DOES' true names and capacities, when ascertained.  Plaintiff is informed and believes and based thereon alleges, that Defendants

DOES 1 through 100 are responsible in some manner for the damages and injuries hereinafter complained of.

19.     DOES 1-50 (hereinafter collectively referred to as "EPSO Supervisory Defendants") were and are now responsible for all processes and practices involved in the EPSO's use of investigative holds, including the detectives who order the arrests, the patrol officers who carry out the arrests, and those responsible for any and all control over the detainees at the Evangeline Parish Jail, as well as anyone responsible for the formulation, promulgation, adoption, application, administration and enforcement of the policies, rules, regulations and practices involved in all aspects of the investigative holds.

20.     DOES 51-100 (hereinafter collectively referred to as "Ville Platte Supervisory Defendants") were and are now responsible for all processes and practices involved in the VPPD's use of investigative holds, including the detectives who order the arrests, the patrol officers who carry out the arrests, and those responsible for any and all control over the detainees at the Ville Platte City Jail, as well as anyone responsible for the formulation, promulgation, adoption, application, administration and enforcement of the policies, rules, regulations and practices involved in all aspects of the investigative holds.

21.     Upon information and belief, Plaintiff further alleges that, at all times relevant herein, the EPSO Supervisory Defendants and the Ville Platte Supervisory Defendants participated in, approved, and/or ratified the unconstitutional or illegal acts complained of herein.

22.     Plaintiff is informed and believes, and thereupon alleges that, at all times relevant herein, the individual Defendants, and each of them, were the agents, servants and employees of their respective employers (Defendants, EPSO and Ville Platte) and were acting at all times within the scope of their agency and employment, and with the knowledge and consent of their principals

and employers.  At all times herein, Defendants, and each of them, were acting under the color of state law.

## STATEMENT OF THE FACTS

23.     Defendant Evangeline Parish operates EPSO as an agency of the municipality in Evangeline Parish, Louisiana. EPSO is responsible for patrolling all of Evangeline Parish, assisting with criminal investigations in towns within the Parish, and operating the Evangeline Parish Jail (the "Parish Jail").  The Parish Jail is located at 200 Court St #104, Ville Platte, Louisiana 70586.

24.     Defendant Ville Platte operates VPPD as an agency of the municipality in Ville Platte, Louisiana.  It also operates the Ville Platte City Jail (the "City Jail") next to VPPD headquarters.  The City Jail, located at 14 Armand St, Ville Platte, Louisiana 70586, is less than a half a mile from the Parish Jail.

25.     Defendants acknowledged to the DOJ that *both EPSO and VPPD work together to address criminal activity in Ville Platte.*

26.     In April 2015, leadership of EPSO, VPPD and the City of Ville Platte confidentially admitted to the DOJ, in the course of their investigation, that their practice of using investigative holds was, and is, unconstitutional.

27.     Regardless of the arresting agency, individuals may be placed in the City Jail or the Parish Jail, and may be moved between jails without judicial oversight. Officers of EPSO and/or VPPD may interchangeably arrest, detain, and interrogate individuals.

28.     When a detective at either EPSO or VPPD wants to question someone in connection with an ongoing criminal investigation, the detective instructs a patrol officer to find that individual in the community and bring him or her in for questioning.  So ordered, the patrol officer locates the individual and commands them to ride in a patrol vehicle to either the City or Parish jail.

29.     Upon arriving at either the City or Parish jail, pursuant to the jails' standard procedures, the individual is strip-searched by jail personnel and then placed in a holding cell until a detective is available to conduct questioning.

30.     At the City Jail, there are two holding cells, each equipped with a hard metal bench and nothing else.  Neither holding cell has a mattress, running water, shower, or toilet in the cell.

31.     Similarly, at the Parish Jail, the holding cell is equipped with only a long metal bench, and the walls are made of metal grating.  EPSO detectives and deputies colloquially refer to the process of detaining individuals for questioning in the Parish Jail holding cell as "putting them on ice."  Both EPSO and VPPD officially refer to these detentions as "investigative holds."

32.     Investigative holds initiated by VPPD often last for 72 hours – and sometimes significantly longer, with booking logs from 2012-2014 referencing several dozen investigative holds lasting for at least a full week or more.  During this time, detainees are forced to spend nights sleeping on either a concrete floor or metal bench.  Additionally, VPPD exerts full control over the detainees' liberty: the detained individual is not permitted to make phone calls to inform family members or employers as to their whereabouts, and have no access to bathrooms or showers unless and until taken into the jail's general population area.

33.     EPSO conducts similar investigative holds, which can last for three full days or longer.  During the hold, detainees are forced to sleep on the Parish Jail's concrete floor.  As with VPPD, EPSO also controls the detainee's liberty: EPSO also does not permit detainees on investigative hold to make phone calls, and in fact, EPSO detectives have threatened Parish Jail officers with retaliation if the officers allowed the detainees to make phone calls.

34.     Detectives of both EPSO and VPPD have acknowledged to the DOJ that they use investigative holds specifically where they ***lack probable cause or sufficient evidence for an***

*arrest*, instead using them when they have a "hunch" or a "feeling" that the individual detained may be connected to criminal activity.

35.    Officers at both EPSO and VPPD admitted to the DOJ that they use the time that a person is on investigative hold to develop their case, either by gathering evidence or by convincing the detainee to confess.   However, both agencies confirmed that they used holds to detain individuals *whom they did not suspect of any involvement in criminal activity*, but who instead were related to suspects, witnessed crimes, or otherwise might have knowledge of criminal activity.  Because officers of EPSO and VPPD are willing to arrest and detain individuals who are merely possible witnesses in criminal investigations, *literally anyone in Evangeline Parish or Ville Platte could be arrested and placed on investigative hold at any time*.

36.    For example, a woman and her family were detained in 2014 after a grocery shopping trip in which they might have witnessed an armed robbery and shooting.  The woman informed VPPD officers that she did not witness the crime, and therefore had no information relating to it.  She was nevertheless required to go to the police station to answer questions, along with her boyfriend and a juvenile who was staying at their house at the time. When she arrived, she was taken into custody at the City Jail.   Officers strip-searched the woman, who was menstruating at the time, and forced her to remove her tampon.  They then placed her in custody overnight – first in a holding cell, and then in the Jail's general population – without access to sanitary products.  Roughly nine hours later, the woman was interrogated by VPPD detectives and the district attorney.  VPPD officers also held the woman's boyfriend overnight in a holding cell, and held the juvenile for at least seven hours in a separate holding cell before releasing him to a family member.  None of these individuals were suspected of having any connection to the robbery or shooting, and yet all were detained for significant periods of time before being shown a line up

or asked questions about what they witnessed.  When the woman called VPPD the day after being released to complain about her treatment, the VPPD Chief responded that **the detention was pursuant to department policy**.

37.     EPSO and VPPD have used these investigative holds as standard practice for well over two decades, possibly longer. In all cases, and at all times, VPPD and/or EPSO hid the extent of the illegality of the practice of using investigative holds.

38.     In no case involving an investigative hold was there prior judicial approval given for the use of the investigative hold practice, thereby removing any justification for said holds under any conception of material witness detentions.  The holds are made **without a warrant, without any showing that the testimony is essential and that obtaining it via subpoena is impracticable, and without any attempt to obtain prior judicial approval, or even subsequent judicial review**.

39.     Defendants Ville Platte and EPSO, engaged in a well-settled, widespread pattern and practice of using unlawful "investigative holds" to seize, detain, and interrogate innocent citizens of Ville Platte and Evangeline Parish, violating their rights under the Fourth Amendment to the Constitution.

40.     At no point were the DOJ investigation details released to the public before December 2016.  Prior to the DOJ published findings, there was no public admission by anyone, let alone the named Defendants in this action, nor any conclusive evidence adduced by another source, that the investigative hold practice violated citizens' rights.  In fact, just three news articles were published following the initiation of the DOJ investigation, all of which only reference "allegations" of generalized misconduct.

41.     One such article, titled *Has the Justice Department Found a New Town that Preys on Its Poor?*, published by PBS FRONTLINE on April 27, 2015, reported the that DOJ was looking into allegations that EPSO officers detain residents in their jails without proper cause.  The author, Sarah Childress, went on to report that the DOJ has the power to sue law enforcement agencies ***"[i]f it finds any"*** constitutional violations, and that the ***"Department of Justice is notoriously tight-lipped"*** about its motives for conducting such an investigation.   Childress's article is abundantly clear that as of the date of her article, the DOJ had not publicly released any comments or findings regarding its investigation. In fact, the article even includes quotes from Defendant Lartigue, who perpetuated Defendants' concealment of their unlawful conduct by saying, ***"As far as I'm concerned, the department is running correctly,"*** and that ***"I'm the victim here*** … I'm the one that is a suspect."  *See* relevant excerpt, attached hereto as **EXHIBIT C**, http://www.pbs.org/wgbh/frontline/article/has-the-justice-department-found-a-new-town-that-preys-on-its-poor/.

42.     As evidenced herein, it was not until December 19, 2016, when the DOJ released the detailed findings of its non-public investigation, that Plaintiff or anyone in Ville Platte or Evangeline Parish became aware of the extent to which they were denied the basic rights afforded to them under the Constitution.

43.     Following the release of the DOJ report, a slew of news articles brought to light the severity of the unconstitutional practices employed by VPPD and EPSO, as well as the fact that no one, including high-ranking police officials, were aware of the unconstitutional nature of their long-standing custom.

44.     For example, on December 19, 2016, the ACADIAN ADVOCATE published a report by KATC-TV titled *Report: Evangeline Sheriff, Ville Platte Police Held People in Jail Cells*

*Without Cause in 'Disturbing' Pattern.* The article summarized the findings of the DOJ report and reiterated the fact that both agencies have been using the practice "for as long as anyone can remember". *See* relevant excerpt, attached hereto as **EXHIBIT D**, http://www.theadvocate.com /acadiana/news/article_f58e1a4c-c643-11e6-96d20fe8fecdac30.html.

45.    On December 29, 2016, the LOUSIANA VOICE published an article by Tom Aswell titled *Police State of Evangeline Slammed in Scathing Justice Dept. Report on Decades of Unconstitutional 'Investigative Arrests.'* This article, quoting excerpts from the DOJ Report, found that both agencies had engaged in ***nearly identical practices of using unconstitutional "investigative holds" within overlapping jurisdictional boundaries***. *See* relevant excerpt, attached hereto as **EXHIBIT E**, https://louisianavoice.com/2016/12/29/police-state-of-evangeline-slammed-in-scathing-justice-dept-report-on-decades-of-unconstitutional-investigative-arrests/.

46.    On December 31, 2016, the ACADIAN ADVOCATE again published an article on the findings of the DOJ Report, this time titled *In Evangeline Parish Arrest Scandal, Civil Liberties Took Back Seat to Decades of Tradition.* The article, written by Jim Mustian, outlined how the investigative hold process had been going on for so long that no one, including Chief Lartigue, ***"ever suspected that investigative holds flew in the face of the 4th Amendment."*** *See* relevant excerpt, attached hereto as **EXHIBIT F**, http://www.theadvocate.com/acadiana/news/ crime_police/article_6981deec-ceb5-11e6-bacf-63ebea1d8c26.html.

47.    As set forth above, the officers responsible for the wrongful conduct at issue did not believe that they were violating any constitutional rights of Evangeline Parish and Ville Platte citizens – thus, the citizens of Evangeline Parish and Ville Platte could not have been aware that their rights had been trampled.

48.     Defendants intentionally placed Plaintiff on an investigative hold.  During the course of Plaintiff's unconstitutional detention, Defendants did not provide Plaintiff any opportunity to challenge her continued detention, or even to notify anyone of the fact of her detention.

49.     Because of Defendants' unlawful actions, Plaintiff has suffered loss of liberty, loss of enjoyment of life, humiliation, mental suffering, emotional distress, stress, and other non-economic losses in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS

50.     This action is brought and may properly be maintained as a class action pursuant to Rule 23(a) as well as Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure. This action is brought pursuant to Rule 23(b)(2) for injunctive or declaratory relief and Rule 23(b)(3) for money damages.

51.     Plaintiff brings this action on behalf of herself, and on behalf of a class of all other persons similarly situated, who were forced to undergo unlawful investigative holds propagated, maintained, and under the control of Defendants, EPSO Supervisory Defendants and Ville Platte Supervisory Defendants during the period March 1, 2016 through the present (the "Class Period").[3]

52.     On information and belief, and based on the DOJ's December 19, 2016 released results of its investigation of VPPD and EPSO, Plaintiff alleges that the investigative holds to which she and Class Members were subjected were done pursuant to Defendants' policy and practice to arrest and detain citizens of Evangeline Parish and Ville Platte without regard to: (i)

---

[3] Plaintiff reserves the right to reallege the full and complete Class Period of January 1, 1997 through the present and to seek review of the December 19, 2017 Order on Defendants Ville Platte and Lartigue's motion to dismiss, holding that Plaintiffs Dugas, Johnson, and Tezeno's claims were prescribed,

probable cause; (ii) presence or existence of a warrant for arrest; (iii) duration of detention; (iv) conditions of detention; or (v) civil rights of detainees held on investigative holds.

53.     On information and belief, and based on the DOJ's December 19, 2016 released results of its investigation of VPPD and EPSO, Plaintiff alleges that Defendants, EPSO Supervisory Defendants and Ville Platte Supervisory Defendants have a policy of maintaining these investigative holds in direct violation of Plaintiff's and Class Members' Fourth Amendment and state law rights, as described above.

## RULE 23 PREREQUISITES

### *Numerosity*

54.     In accordance with Fed. R. Civ. P. 23(a), the members of the Class are so numerous that joinder of all members is impracticable.  Plaintiff does not know the exact number of Class Members.  Plaintiff is informed and believes and thereon alleges that there are more than 50 prisoners over the course of the last year who were subjected to investigative holds as a result of Defendants' policy and practice of indiscriminately violating individual detainees' rights under the United States Constitution and Louisiana state law.

### *Common Issues of Fact or Law*

55.     In accordance with Fed. R. Civ. P. 23(a), there are questions of fact common to the Class.  Plaintiff is informed and believes and thereon alleges that the common questions of fact include, but are not limited to the following: (1) Whether Defendants routinely subject the citizens of Evangeline Parish and Ville Platte to arrest and detention without warrant or probable cause; (2) Whether the manner and condition of individuals' detentions on investigative hold are equivalent or else so similar as to be functionally equivalent; and (3) Whether the duration of

detainees' incarceration on investigative holds similarly violate the detainees' constitutional and state rights.

56.      In accordance with Fed. R. Civ. P. 23(a), there are questions of law common to the Class.  Plaintiff is informed and believes and thereon alleges that the common questions of law include but are not limited to the following: (1) Whether Defendants may indiscriminately arrest and detain individuals without there being any warrant or probable cause, based on specific or articulable facts, for their arrest; (2) Whether Defendants' use of investigative holds violates detainees' Fourth Amendment rights, in violation of 42 U.S.C. § 1983; (3) Whether Defendants' use of investigative holds violates La. Rev. Stat. Ann. § 15:257; (4) Whether Defendants' use of investigative holds violates La. Code Crim. Proc. Ann. art. 230.2; (5) Whether the conduct described above constitutes a policy or custom of the Defendants; (6) Whether any individual Defendant is entitled to qualified immunity on the federal claims, or state law immunity on the state law claims, for the practices complained of herein; and (7) Whether determination of damages suffered by a statistically representative sample of the Class provides the basis for determination of all Class Members' damages except those who opt out.

*Typicality*

57.      In accordance with Fed. R. Civ. P. 23(a), the claims of the representative Plaintiff are typical of the Class. Plaintiff has the same interests and has suffered the same type of damages as the Class Members.  Plaintiff's claims are based upon the same or similar legal theories as the claims of the Class Members.  Each Class Member suffered actual damages as a result of being subjected to an investigative hold.  The actual damages suffered by Plaintiff are similar in type and amount to the actual damages suffered by each Class Member.

58. In accordance with Fed. R. Civ. P. Rule 23(a), the representative Plaintiff will fairly and adequately protect the interests of the Class. The interests of the representative Plaintiff are consistent with and not antagonistic to the interests of the Class.

59. Upon information and belief, Defendants' continue to utilize and conduct investigative holds, a policy and practice that indiscriminately violate individual detainees' rights under the United States Constitution and Louisiana state law, on grounds that apply generally to the Class so that final injunctive relief is appropriate with respect to the Class as a whole.

*Maintenance and Superiority*

60. In accordance with Fed. R. Civ. P. 23(b)(1)(A), prosecutions of separate actions by individual members of the Class would create a risk that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for the parties opposing the class.

61. In accordance with Fed. R. Civ. P. 23(b)(1)(B), prosecutions of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, substantially impair or impede the interests of the other members of the Class to protect their interests.

62. In accordance with Fed. R. Civ. P. 23(b)(2), Plaintiff is informed and believes and thereon alleges that the Defendants have acted on grounds generally applicable to the Class.

63. In accordance with Fed. R. Civ. P. 23(b)(3), the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. Plaintiff is informed and believes and thereon alleges that the interest of Class Members in individually controlling the prosecution of a separate action is low,

in that most Class Members would be unable to individually prosecute any action at all.  Plaintiff is informed and believes and thereon alleges that the amounts at stake for individuals are such that separate suits would be impracticable in that most members of the Class will not be able to find counsel to represent them.  Plaintiff is informed and believes and thereon alleges that it is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, *i.e.*, Evangeline Parish, and it will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple courts.

64.     Plaintiff does not know the identities of the Class Members.  Plaintiff is informed and believes and thereon alleges that the identities of the Class Members are ascertainable from EPSO and VPPD records.  Plaintiff is informed and believes and thereon alleges that these records reflect the identities, including addresses and telephone numbers, of the persons who have been held in custody on investigative holds by EPSO and/or VPPD; when detainees were arrested, taken into custody, and why and when they were eventually released.

65.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  The class action is superior to any other available means to resolve the issues raised on behalf of the Class.  The class action will be manageable because several different records systems exist from which to ascertain the members of the Class.  Liability can be determined on a class-wide basis.  Damages can be determined on a class-wide basis using a damages matrix set by a jury, or by trying the damages of a statistically valid sample of the Class to a jury and extrapolating those damages to the Class as a whole.

66.     In accordance with Fed. R. Civ. P. Rule 23(b)(3), Class Members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Plaintiff is informed and believes that

EPSO and VPPD records contain last known addresses for Class Members.  Plaintiff contemplates that the notice will inform Class Members of the following:

      A.      The pendency of the class action, and the issues common to the Class;

      B.      The nature of the action;

      C.      Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

      D.      Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named Plaintiff and her counsel; and

      E.      Their right, if they do not 'opt out,' to share in any recovery in favor of the Class, and conversely to be bound by any judgment on the common issues, adverse to the Class.

### TIMELINESS OF PLAINTIFF'S AND OTHER CLASS MEMBERS' CLAIMS

67.      The applicable statutes of limitations for Plaintiff and other Class Members' claims for relief asserted in this Complaint were tolled by Defendants' affirmative acts of concealment, as described below.  At all relevant times herein, Defendants actively concealed their long-standing custom of using unconstitutional investigative holds by threatening legal reprisals and further detention against anyone who spoke up about their ordeal, and by misleading individuals who investigated their incarcerations by informing them that the investigative hold practice was "pursuant to department policy," clearly suggesting that it was therefore legal.  As a result, Plaintiff and other Class Members, who had a deep-seated fear of law enforcement, understood that, at the time, they were not to discuss what happened to them with anyone and as a result took no action until this suit was filed.  Upon information and belief, members of the putative Class were

18

questioned by the Federal Bureau of Investigation and representatives of the DOJ who told them not to discuss the government investigation until after the DOJ completed its report and findings. The putative Class Members lacked sophistication and education, and were under the impression and of the understanding that they were ordered by people cloaked with the authority of the law (*i.e.*, the FBI and DOJ) not to discuss the events which happened to them until after the release of the DOJ Report.

68.     Nevertheless, in accordance with the partial decision on Defendants' motion to dismiss holding that the claims of the Class prior to March 1, 2016 are prescribed, Plaintiff asserts herein only claims from that date to the present.  However, Plaintiff reserves all rights to seek review of that decision at an appropriate time.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Fourth Amendment – 42 U.S.C. § 1983

69.     Plaintiff hereby re-alleges and incorporates by reference all allegations in all preceding paragraphs.

70.     Without any basis in state law, Defendants willfully and intentionally detained Plaintiff in violation of her Fourth Amendment rights against unlawful search and seizure without probable cause.

71.     As a direct result of Defendants' actions, Plaintiff was unlawfully deprived of her liberty.

72.     A municipal government may be held liable under 42 U.S.C. § 1983 where a plaintiff demonstrates that a deprivation of a federal right occurred as a result of a policy of the local government's legislative body, or the actions of local officials where those acts may fairly be said to be those of the municipality.

73.    Investigative holds have been municipal policies for both Evangeline Parish and Ville Platte for over two decades, as they have been used with willful disregard for the Fourth Amendment rights of Defendants' citizens for that entire duration, and the investigative holds are directly causally linked to the deprivation of those rights.

74.    Given the two-decade-plus duration of EPSO and VPPD's practice of using illegal investigative holds, the Defendants' policy and actions of their local officials, as well as the clear municipal policies these investigative holds represent, make Defendants liable to Plaintiff under 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
### La. Rev. Stat. Ann. § 15:257

75.    Plaintiff hereby re-alleges and incorporates by reference all allegations in all preceding paragraphs.

76.    Defendants arrested and imprisoned Plaintiff in the hope of eliciting information relating to criminal activity.

77.    Defendants did not have, nor seek to have, a judge issue warrants for Plaintiff's arrest.

78.    Defendants also did not attempt to subpoena Plaintiff, nor entertain the possibility of doing so.

79.    Accordingly, Defendants violated Plaintiff's rights under Louisiana law, La. Rev. Stat. Ann. § 15:257.

## THIRD CAUSE OF ACTION
### La. Code Crim. Proc. Ann. art. 230.2

80.    Plaintiff hereby re-alleges and incorporates by reference all allegations in all preceding paragraphs.

81.    Defendants arrested and imprisoned Plaintiff without warrants or probable cause.

82.    Defendants maintained Plaintiff's detention for longer than 48 hours without any determination being made as to whether there was probable cause for their arrests and incarcerations.

83.    Following the expiration of 48 hours' detention, Plaintiff was not released on her own recognizance.

84.    Accordingly, Defendants violated Plaintiff's rights under Louisiana law, La. Code Crim. Proc. Ann. art. 230.2(A), (B)(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class Members she represents, demands judgment against Defendants as follows:

85.    Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as a Class representative and Plaintiff's counsel as counsel for the Class;

86.    An order enjoining Defendants further use of investigative holds, a policy and practice, which that indiscriminately violate individual detainees' rights under the United States Constitution and Louisiana state law;

87.    Awarding compensatory and punitive damages in favor of Plaintiff and the other Class Members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be determined at trial, including pre- and post-judgment interest thereon;

88.     Awarding Plaintiff and the other Class Members their reasonable costs and expenses incurred in this action, including counsel fees and costs, and expert fees and costs, including specifically all costs and attorney fees pursuant to 42 U.S.C. § 1988; and

89.     Such other and further relief as this Court deems just and proper.


DATED this 31 day of January, 2018           Respectfully submitted,

                                             By: */s/ Daniel B. Rehns*_____
                                                     Daniel B. Rehns

                                             **HACH ROSE SCHIRRIPA & CHEVERIE LLP**
                                             Frank R. Schirripa, Esq.
                                             Daniel B. Rehns, Esq.
                                             Seth M. Pavsner, Esq.
                                             112 Madison Avenue, 10th Floor
                                             New York, New York 10016
                                             Tel: (212) 213-8311

                                             **LAW OFFICE OF CONRAD J. BENEDETTO**
                                             Conrad J. Benedetto, Esq.
                                             Kimmo H. Abasi, Esq.
                                             1615 S. Broad Street
                                             Philadelphia, Pa. 19148
                                             Tel.: (215) 389-1900

                                             *Counsel for Plaintiff and Putative Class*



                                             */s/ Trachelle Cornish*_____
                                                     Trachelle Cornish

                                             **CORNISH LAW, LLC**
                                             Trachelle Cornish, Esq.
                                             201 St. Charles Avenue, Suite 2500
                                             New Orleans, LA 70170
                                             Tel.: (504) 507-8312

                                             *Liaison Counsel for Plaintiff and Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel B. Rehns, certify that on January 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record registered with the CM/ECF system.

Dated: January 31, 2018                    HACH ROSE SCHIRRIPA & CHEVERIE LLP

By: */s/ Daniel B. Rehns*
                  Daniel B. Rehns